IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| P.S. PRODUCTS, INC. | § | |
| BILLY PENNINGTON, INDIVIDUALLY | § | |
| | § | CIVIL ACTION NO. 4:22-cv-473-JM |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| PANTHER TRADING COMPANY, INC. | § | |
| | § | |
| Defendant. | § | |

**BRIEF OF PANTHER TRADING COMPANY, INC. IN SUPPORT OF MOTION FOR
ATTORNEY FEES, EXPENSES AND DETERRENCE SANCTIONS**

**Table of Contents**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 3

   A.   THE PARTIES ............................................................................................ 3

   B.   PSP'S PERVASIVE PATENT LITIGATION IN ARKANSAS ...................... 4

   C.   THE PRESENT LAWSUIT ......................................................................... 5

III. LEGAL STANDARD ....................................................................................... 7

   A.   35 U.S.C. § 285: AWARD OF ATTORNEY FEES IN "EXCEPTIONAL CASES" ...................... 7

   B.   THE COURT'S INHERENT POWER TO SANCTION ................................ 8

IV.  ARGUMENT ..................................................................................................... 9

   A.   THE ALLEGATIONS IN THE COMPLAINT ARE LEGALLY AND FACTUALLY BASELESS ON THEIR FACE, RENDERING THIS CASE EXCEPTIONAL UNDER 35 U.S.C. § 285 ............................. 9

      1.   PSP's legal claims are objectively meritless and were made for the sole purpose of leveraging the high cost of patent defense to extract a quick settlement. ............................. 9

      2.   PSP had no basis for filing suit in Arkansas but filed here anyways to drive up Panther's fees and expenses. ................................ 14

      3.   PSP knew that the D188 Patent was invalid based on PSP's own prior art, but filed the lawsuit anyways. .......................... 15

      4.   The D188 Patent is unenforceable due to PSP's fraud on the USPTO, and PSP knew that prior to filing suit. ................................ 16

   B.   PANTHER'S ATTORNEY FEES AND EXPENSES ARE REASONABLE AND WARRANTED. ..... 17

   C.   DETERRENT SANCTIONS ARE APPROPRIATE AND IN THE INTEREST OF THIS DISTRICT. .... 21

V.   CONCLUSION ................................................................................................. 22

# EXHIBIT AND DECLARATION LIST

| Exhibit No. | Description |
|---|---|
| A | Search Results for Plaintiffs' Patent Filings in Arkansas Since 2010 via Docket Navigator™ |
| B | U.S. Patent No. D680,188 (the "D188 Patent") |
| C | Correspondence dated June 24, 2022 from Panther's Counsel to PSP's Counsel Providing Rule 11 Letter and Draft Motion for Rule 11 Sanctions |
| D | Plaintiffs' ZAP Light Stun Gun / Flashlight Brochure dated May 2011 |
| E | Correspondence dated July 6, 2022 from Panther's Counsel to PSP's Counsel Providing Notice of Inequitable Conduct and Invalidity Regarding D188 Patent |
| F | Correspondence Dated July 26, 2022 from Panther's Counsel to PSP's Counsel Regarding Reimbursement of Attorney Fees |
| G | American Intellectual Property Law Association, *Report of the Economic Survey 2021* |
|  | Declaration of Harsimran Singh, President, Panther Trading Company, Inc. |
|  | Declaration of Stephen D. Zinda, Counsel for Panther |

## I.   INTRODUCTION

Defendant Panther Trading Company, Inc. ("Panther") respectfully requests that the Court award Panther all of its attorney fees and expenses in the amount of $31,103 pursuant to 35 U.S.C. § 285. Panther also requests that the Court exercise its inherent power and issue deterrent sanctions against Plaintiffs P.S. Products, Inc. and Billing Pennington (collectively "PSP") in the amount of $100,000 to dissuade PSP from further burdening courts in this District with meritless lawsuits.[1]

Since 2010, PSP has filed 26 patent lawsuits. Of those, 25 were filed in Arkansas accounting for over 30% of all patent lawsuits filed in Arkansas in that period. An unmistakable pattern has emerged where PSP files a complaint with obvious fundamental defects, forcing defendants to either quickly settle or waste considerable resources fighting threshold issues (e.g., personal jurisdiction, venue, failure to state a claim,). In the cases where defendants do not immediately back down but choose to fight, the cases either abruptly settle before the courts rule on the pending motions to dismiss or they result in PSP's dubious claims being successfully challenged.

PSP's lawsuit against Panther is continuation of this abusive and predictable pattern, as there are four glaring reasons the lawsuit is meritless and should have never been filed.

First, PSP alleges that Panther's stun gun product infringes PSP's design patent, despite the patented design and accused product design being plainly and remarkably *dissimilar*. Indeed, a simple side-by-side comparison of the accused product against the design patent figures shows that the infringement allegations are facially unreasonable.

---

[1] This motion is timely pursuant to FRCP 54 and Local Rule 54.1, as it was filed within 14 days of the Court's Order of Dismissal with Prejudice entered August 1, 2022. Dkt. 15.

1

Second, PSP filed its lawsuit in Arkansas even though venue is clearly improper. Consequently, like the other defendants targeted by PSP, Panther was forced to needlessly incur fees fighting venue in a lawsuit that PSP knows it cannot win on the merits.

Third, PSP knew that it had publicly advertised and sold a product virtually identical to the design covered by the asserted patent more than a year before the patent was filed. That means that the asserted design patent is invalid based on PSP's own prior art, which PSP was certainly aware of when it filed suit.

Fourth, PSP defrauded the United States Patent and Trademark Office ("USPTO") to procure the asserted design patent. PSP knowingly concealed its own marketing publication from the USPTO, which would have prevented the USPTO from ever issuing the design patent. Consequently, PSP asserted a patent that it knew was unenforceable by law due to inequitable conduct.

Even setting aside the complete and total lack of legal merit, PSP's conduct over the course of this litigation also reeks of bad faith. In addition to refusing to grant Panther an extension of time to respond to the complaint (an extraordinarily common courtesy), PSP completely ignored Panther's repeated letters identifying the fundamental defects discussed above. In doing so, PSP intentionally dragged this lawsuit out and forced Panther to unnecessarily incur fees and expenses, including to file a motion to dismiss with prejudice. It was not until the response deadline that PSP abruptly moved to dismiss its own case *with* prejudice, which is an implicit admission that the lawsuit had no merit and that PSP could not even muster a reasonable response to the motion. The belated dismissal does not excuse filing this meritless lawsuit in the first place. Nor does it reimburse Panther for the fees and expenses it was forced to incur based on PSP's frivolous litigation activity.

For the reasons above, this case is "exceptional" pursuant to 35 U.S.C. § 285. Because all of Panther's incurred fees and expenses stem from the meritless complaint and PSP's litigation conduct, an award of all of Panther's fees and expenses in this case are appropriate. It is also appropriate for the Court to invoke its inherent power to issue deterrence sanctions to dissuade PSP from further abuse of the judicial process in this District.

## II.     BACKGROUND

### A.  THE PARTIES

Defendant Panther is a Maryland based company specializing in the sale of swords, knives, ninja and martial arts products, paper weights, and self-defense products, such as stun guns, to resellers. Declaration of Harsimran Singh ("Singh Decl.") ¶3. Panther is incorporated in Maryland and has its headquarters (i.e., the combination of an office and warehouse) at 1581 Sulphur Spring Road, Suite 113 Lansdowne, Maryland.  *Id.* ¶4. That is Panther's only physical presence in the United States. *Id.* Conversely, Panther has no physical presence in Arkansas (*e.g.*, offices, distribution centers, warehouses, real estate holdings, P.O. Box) and no personnel (e.g., employees, independent contractors, consultants) in Arkansas. *Id.* ¶¶5-7. Panther also has no distributors or agents in Arkansas. *Id.* ¶6.

Plaintiff PSP is an Arkansas company that purports to be in the business of designing, manufacturing and distributing pepper spray, stun devices, gun cleaning kits and unique handgun concealment products. *See* P.S. Products Website, "Our Mission," *available at* https://psproducts-com.myshopify.com/pages/our-mission (last visited June 6, 2022). Mr. Pennington is the president of P.S. Products, Inc. Dkt. 1 ¶ 5.

### B. PSP's Pervasive Patent Litigation in Arkansas

PSP also appear to be in the patent assertion business, having asserted 26 patent lawsuits nationally since 2010, 25 (or 96%) of which were filed in Arkansas. Ex. A.[2] In fact, there have been a total of 88 patent suits filed in Arkansas over that same period, meaning PSP is responsible for nearly 30% of all patent cases filed in Arkansas over that period of time. *Id.*

Thirteen (13) of the 25 suits filed were dismissed by PSP either before or soon after an answer was filed.[3] Three (3) were dismissed by PSP after a motion to dismiss was filed but before the court had an opportunity to rule on the motion.[4]

In the few instances where the courts in Arkansas have adjudicated a defendant's motion to dismiss, PSP's claims were either dismissed for lack of personal jurisdiction or for failure to state a claim. *See,* e.g., *P.S. Prods., Inc. v. Alibaba.com Inc.*, No. 10-01149-JMM, 2011 WL 861164 (E.D. Ark. Mar. 10, 2011); *P.S. Prods., Inc. v. Activision Blizzard, Inc.*, 140 F. Supp. 3d 795, 801 (E.D. Ark. 2014).

Five (5) cases are pending (this one included) and a motion to dismiss has been fully briefed but not yet ruled on in one of those five.[5] *P.S. Prods., Inc. v. Focus Technology Co. Ltd.*, 4:22-cv-

---

[2] Exhibit A is the search results of Docket Navigator™ for all patent cases filed in Arkansas since January 1, 2010.

[3] *PS Prods., Inc. v. Maxsell Corporation*, 4-12-cv-00214 (EDAR); *P.S. Prods., Inc. v. B&F System, Inc.*, 4-13-cv-00197 (EDAR); *P.S. Prods., Inc. v. SSW Company, LLC*, 4-14-cv-00289 (EDAR); *P.S. Prods., Inc. v. AM Wholesale, Inc.*, 4-15-cv-00537 (EDAR); *P.S. Prods., Inc. v. SDC Self Defense Corp.*, 4-12-cv-00536 (EDAR); *P.S. Prods., Inc. v. Smart Stuff*, 4-12-cv-00537 (EDAR); *P.S. Prods., Inc. v. SC Imports LLC*, 4-13-cv-00196 (EDAR); *P.S. Prods., Inc. v. Jobar International, Inc.*, 4-15-cv-00724 (EDAR); *P.S. Prods., Inc. v. RSR Electronics, Inc.*, 4-16-cv-00549 (EDAR); *P.S. Prods., Inc. v. DP and Company, Inc.*, 4-22-cv-00033 (EDAR); *P.S. Prods., Inc. v. Cutting Edge Products Inc.*, 4-22-cv-00035 (EDAR); *P.S. Prods., Inc. v. Pacific Solution Marketing, Inc.*, 4-22-cv-00067 (EDAR); *P.S. Prods. Inc. v. Mini Gadgets Inc.*, 4-11-cv-00532 (EDAR).

[4] *P.S. Prods., Inc. v. Mike Coke Auction Inc.*, 4-11-cv-00677 (EDAR); *P.S. Prods., Inc. v. Activision Blizzard, Inc.*, 4-13-cv-00342 (EDAR); *P.S. Prods., Inc. v. Amazon.com, Inc.*, 4-15-cv-00538 (EDAR).

[5] *P.S. Products v. JP Communications Inc.*, 4-22-cv-00030 (EDAR); *P.S. Products, Inc. v. eStores International LLC*, 4-22-cv-00031 (EDAR); *P.S. Products, Inc. v. DC Mach Inc.*, 4-22-cv-00034 (EDAR).

4

32-KGB (E.D.A.R.). Accordingly, it appears PSP has engaged in a pattern of leveraging the high cost of defending against patent infringement lawsuits to extract quick settlements, including by improperly filing virtually all of its lawsuits in Arkansas to drive up defense fees and expenses.

### C. THE PRESENT LAWSUIT

PSP filed this suit against Panther on May 23, 2022, alleging directed and induced infringement of U.S. Design Patent D680,188 ("the D188 Patent") and unfair trade practice under the Arkansas Deceptive Trade Practices Act ("ADTPA"). Dkt. 1 at ¶¶ 46-69. The D188 Patent is attached as Exhibit B. The unfair trade practice claims are based solely on the patent infringement claims. *Id.* ¶¶ 57, 68-69.[6] Consequently if the patent infringement claims are frivolous so too is the ADTPA claim.

Soon after learning of the lawsuit, Panther's President Harsimran Singh repeatedly reached out to PSP's only attorney-of-record, Chris Stewart, requesting an extension of time to respond to the complaint. Singh Decl. ¶ 9. Mr. Singh called Stewart on multiple occasions to request an extension. *Id.* ¶ 10. Mr. Stewart ignored those calls, but Mr. Singh left him at least one voicemail about the extension. *Id.* Mr. Stewart ignored the voicemail. *Id.*

Additionally, Mr. Singh sent Mr. Stewart emails on June 16, June 17, and June 20 specifically requesting an extension. *Id.* ¶ 11. As with the phone calls, Mr. Stewart ignored those requests. Because PSP ignored Mr. Singh's repeated requests for an extension, Panther had no other option than to prepare a response to the Complaint. It then became apparent that PSP's legal allegations were frivolous.

On June 24, Panther sent a Rule 11 Letter and draft motion for Rule 11 sanctions to Mr.

---

[6] While the Complaint references "trademark and/or trade dress" rights in paragraphs 33 and 68, this reference was clearly an error and likely the remnants from a recycled version of one of the other 24 patent lawsuits PSP has filed in this District.

Stewart via email and Federal Express. Ex. C. In both the letter and draft motion, Panther explained that: (i) the infringement allegations were facially frivolous given how plainly dissimilar the patented design and accused product are; and (ii) venue was statutorily improper and the case should have never been filed in Arkansas. Mr. Stewart ignored the letter, failing to even attempt to dispute Panther's positions.

That same day, Panther filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (failure to state a plausible claim) and 12(b)(3) (improper venue). Dkt. 8. The Motion to Dismiss included the same arguments set forth in the letter sent to Mr. Stewart. PSP never responded to the motion, instead ignoring the July 8 response deadline.

Soon after filing the Motion, Panther also discovered incontrovertible evidence that PSP had procured the D188 Patent by defrauding the U.S. Patent and Trademark Office ("USPTO"), which constitutes "inequitable conduct" that renders the patent unenforceable. More specifically, Panther discovered that PSP concealed one of its publicly available marketing brochures from the USPTO when PSP was trying to convince the patent examiner to issue the patent. A copy of the brochure is attached as Exhibit D. That marketing brochure depicted a product virtually identical to the designed claimed in the D188 Patent and was published in May 2011, which is more than a year before the D188 Patent filing date of June 4, 2012. That means PSP should have never been issued the D188 Patent because the marketing brochure is invalidating prior art.

In view of this new discovery, Panther sent another letter to Mr. Stewart on July 6 explaining that the D188 patent is unenforceable due to PSP's fraud on the USPTO and demanding that the lawsuit be dismissed. Ex. E. Panther also attached a copy of the marketing brochure to the letter. *Id.* Mr. Stewart never responded to the letter.

 On July 11, PSP abruptly and unexpectedly moved to voluntarily dismiss the case **with**

prejudice. Dkt. 12. The Court dismissed the case with prejudice on August 1, 2022. Dkt. 15. Importantly, the parties did not settle the dispute or even discuss settlement. Declaration of Stephen D. Zinda ("Zinda Decl.") ¶ 13. Nor did PSP ever communicate or respond to any of Panther's communications regarding the frivolity of the lawsuit. *Id.* ¶¶14-15.

On July 26, Panther sent PSP a final letter demanding that PSP reimburse Panther for the attorney fees and expenses it had incurred defending against this meritless lawsuit. Ex. F. Hopeful that PSP would agree to reimburse Panther without the need for Court intervention, Panther provided PSP until July 29, 2022 to respond to the letter. *Id.* Panther also informed PSP that if it refused to reimburse Panther for its fees and expenses, Panther would also seek deterrence sanctions to dissuade PSP from further frivolous filings in this District. *Id.* Unfortunately, PSP also completely ignored that letter. Accordingly, Panther filed the present motion seeking reimbursement of its fees and expenses and the issuance of deterrence sanctions.

## III.     LEGAL STANDARD

### A.  35 U.S.C. § 285: AWARD OF ATTORNEY FEES IN "EXCEPTIONAL CASES"

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "Exceptional" means "uncommon," "rare," or "not ordinary." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). "[A]n 'exceptional' case is [] one that stands out from others with respect to [1] the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated." *Id.* at 554. The evidentiary standard for a finding of exceptional case is preponderance of the evidence after considering the "totality of the circumstances." *Id.* at 554, 557.

Assessing whether a case is exceptional is left to the district court's discretion, considering

the "totality of the circumstances." *Id.* at 554. Factors that the Court may consider include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554, n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n.19 (1994)). "[A] case presenting either subjective bad faith or exceptionally meritless claims" may justify an award of attorney's fees. *Id.* at 555. However, to be considered exceptional, a party's conduct need not be "independently sanctionable." *Id.* ("[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees.").

### B.   THE COURT'S INHERENT POWER TO SANCTION

"Courts are vested, by their very creation, with certain implied powers. Courts have the inherent power to control litigation by imposing sanctions appropriate to rectify improper conduct by litigants. These powers are wide-ranging." *Arunachalam v. IBM*, 989 F.3d 988, 1001 (Fed. Cir. 2021); *see Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affs.*, 710 F.3d 1328, 1335 (Fed. Cir. 2013) ("[W]hile sanctions must be fashioned with restraint and discretion, courts of justice can fashion appropriate monetary and nonmonetary sanctions to rectify misbehavior."). "A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 745 (8th Cir. 2004) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991) (discussing the inherent powers of federal courts)).

As explained by the Eight Circuit:

The Supreme Court's prior cases have indicated that the inherent power of a court to impose sanctions can be invoked even if procedural rules exist which sanction the same conduct. Indeed, the Supreme Court has rejected the notion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's

fees as a sanction for bad-faith conduct. . . . But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the Federal Rules. While a court ordinarily should rely on the Federal Rules rather than its inherent power when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, a court may safely rely on its inherent power if in its informed discretion the Rules are not up to the task.

*Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020) (internal quotations and alterations in original omitted) (approving sanctions under Court's inherent authority where Rule 11 was not "up to the task" in this situation); *See also* Rule 11(c)(4) (allowing for sanction that "suffices to deter repetition of the conduct or comparable conduct by others similarly situated").

## IV.    ARGUMENT

### A.  THE ALLEGATIONS IN THE COMPLAINT ARE LEGALLY AND FACTUALLY BASELESS ON THEIR FACE, RENDERING THIS CASE EXCEPTIONAL UNDER 35 U.S.C. § 285.

There are four independent reasons this case stands out from others with respect to the substantive strength of PSP's litigation positions and the unreasonable way PSP litigated this case.

1. PSP's legal claims are objectively meritless and were made for the sole purpose of leveraging the high cost of patent defense to extract a quick settlement.

A finding of exceptional case is appropriate where legal claims are "exceptionally meritless." *Octane Fitness*, 572 U.S. at 555. PSP's Complaint alleges direct and induced infringement of the D188 patent based on Panther's Black 85 Mill Volt Tiger-USA Xtreme Tiger Claw Stun Gun ("Accused Product"). Dkt. 1 ¶¶ 30-33, 46-56. However, even the most cursory infringement analysis shows how exceptionally meritless that allegation is.

A determination of design patent infringement involves a two-step test: (1) claim construction, and (2) comparing the claims to the accused design. *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).

Turning first to claim construction, the '188 Patent claims "[t]he ornamental design for a long-spiked electrode for a stun device, as shown and described" and discloses four figures that display a stun gun with six spikes arranged circularly in two arcs, with three spikes in each arc:



FIG. 1

Ex. B at 1. The patent states that the "broken line showing of the environmental structure is for illustrative purposes only and forms no part of the claimed design." *Id.* Accordingly, the stun gun body is not part of the claimed design. Instead, the only claimed design is six spikes arranged circularly as two arcs with three spikes in each arc, as depicted in Figure 1 of the D188 Patent.

Turning next to infringement, the "ordinary observer" test is applied:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Columbia Sportswear N. Am., Inc. v. Seirus Innnovative Access, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019). "It is the appearance of a design ***as a whole*** which is controlling in determining infringement. There can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar[.]" *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (emphasis added).

As shown in the side-by-side comparison in Table 1 below, PSP acted unreasonably in alleging that an ordinary observer would find the two designs "substantially similar" or be "deceived" into buying Panther's product believing it to be the patented design.

| TABLE 1 | |
|---|---|
| **'188 Patent Figures** | **Panther's Accused Product** |
|  Perspective view of claimed design |  Perspective view of accused product |
|  Top Plan View of claimed design |  Top Plan View of accused product |
|  First side elevation view of claimed design |  First side elevation view of accused product |
|  Second side elevation view of claimed design |  Second side elevation view of accused product |

The overall designs of each are remarkably dissimilar. For example, the patented design has six spikes, whereas the accused product has two spikes. Similarly, the patented design comprises two **arcs** containing *three* spikes each, whereas the accused product only has a one **line** with *two* spikes. The overall arrangement of all six spikes in the patented design is *circular*, whereas the arrangement of the two spikes is simply a *straight line*. Finally, while the design of the stun gun body in the D188 Patent forms no part of the claimed invention, it would nevertheless be impossible for an ordinary observer to ignore the fact that the stun gun body is also *completely* different than the stun gun body of the accused product when performing the above comparison.

Given the obvious and substantial dissimilarities, it is facially implausible that an ordinary observer could ever be "deceived" into buying the accused product because he or she believes it to be the patented design. See *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 933-34 (Fed. Cir. 2014) ("These differences *are markedly apparent*, and the court properly concluded that Ms. Anderson did not state a plausible claim for why the ordinary observer would be deceived into believing that the Defendant's products were the same as the patented design.") (emphasis added); *Colida v. Nokia, Inc.*, 347 F. App'x 568, 569-71 (Fed. Cir. 2009) (finding district court properly granted Nokia's motion to dismiss design patent infringement claims where "Colida's infringement claims were *facially implausible*" and "*provided the district court with no basis on which to reasonably infer that an ordinary observer would confuse the pleaded patented designs* with the accused" Nokia phone where the dissimilarities between the two far exceed the similarities) (emphasis added); *OurPet's Co. v. Iris USA, Inc.*, Case No. 1:14-cv-1642, 2015 U.S. Dist. LEXIS 185150, 2015 WL 12780599, at *3 (N.D. Ohio Mar. 23, 2015) (granting defendant's Rule 12(b)(6) motion to dismiss plaintiff's design patent infringement case where, when comparing the design patent drawings with photographs of defendant's accused product, the court found that the two

products are "***plainly dissimilar (not substantially the same)***" and an ordinary observer would not be induced to buy one supposing it to be the other).

Accordingly, PSP's infringement allegations are exceptionally meritless; this lawsuit should have never been filed. It is apparent that the only reason the lawsuit was filed was to try and extract a quick settlement from Panther by leveraging the high fees and expenses associated with defending a lawsuit. *See SFA Syst., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351 (Fed. Cir. 2015) (explaining that "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285"). Indeed, PSP ignored the deadline to respond to the motion to dismiss, because PSP knew it had no justification for filing this suit. Instead, PSP abruptly dismissed with prejudice days later.

With respect to the Arkansas Deceptive Trade Practices Act ("ADTPA"), the Complaint does nothing more than reference its prior assertions of patent infringement. Dkt. 1 ¶ 68.[7] In other words, the sole basis for the ADPTA violation is the alleged design patent infringement. Because the ADPTA claim is based exclusively on the frivolous patent infringement claim, the ADPTA claim is also legally and factually groundless.[8]

---

[7] While the ADTPA claim references "infringement of PSP's trademark and/or trade dress rights," PSP has not asserted trademark or trade dress infringement. It is apparent that the reference to "trademark or trade dress infringement" is in the Complaint because it was recycled from one of P.S. Products many other dubious lawsuits.

[8] Additionally, because the ADTPA claim is based exclusively on the patent infringement claim, the ADPTA claim is also clearly preempted by federal patent law. *See Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 777 (5th Cir. 2017) (finding that federal patent law preempts the Texas unfair competition cause of action); *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377-78 (Fed. Cir. 2005) ("Federal law preempts state law that offers 'patent-like protection' to discoveries unprotected under federal patent law."). In other words, even if the patent infringement claim were not frivolous (it is), the ADPTA claim would nevertheless be meritless due to federal preemption.

2. <u>PSP had no basis for filing suit in Arkansas but filed here anyways to drive up Panther's fees and expenses.</u>

In addition to the substantive legal claims having no merits, PSP also abused the judicial process by filing this lawsuit in Arkansas despite having no basis for venue. The patent venue is crystal clear with respect to where patent suits may be filed: "[A] corporation may be sued for patent infringement in only two categories of judicial districts; [1] those in the state in which it is incorporated and [2] those in which it has a regular and established place of business and an act of infringement has occurred." *Valeant Pharms. N. Am. V. Mylan Pharms., Inc.*, 978 F.3d 1374, 1375 (Fed. Cir. 2020) (citing 28 U.S.C. § 1400(b)).

Venue is improper under [1] because Panther is incorporated Maryland, not Arkansas.  This is publicly available information that is easily accessible on Maryland's Secretary of State website. *See* Exhibit C.   Venue is improper under [2] because Panther does not have a "regular and established place of business" in Arkansas.  Panther does not have an office, real estate, facilities, employees, or even a P.O. Box, in Arkansas. Singh Decl. ¶¶4-7.  Panther's principal place of business is in Maryland.  *Id.* at ¶4.

PSP was required to conduct a "reasonable inquiry" into its factual and legal allegations prior to filing suit. However, PSP could not have had a factual basis for asserting venue in Arkansas because Panther is not incorporated in Arkansas and has no physical presence or employees in the state. Indeed, PSP did not even attempt to allege either of these *required* facts in its Complaint. Instead, PSP misleadingly cited the incorrect statute, the general venue provision 28 U.S.C. § 1391, as its basis for venue. Dkt. 1 ¶ 2. Given that PSP has filed over 25 patent lawsuits in this Arkansas, some of which have been challenged on the basis of venue, PSP cannot feign ignorance about the

requirements for venue.[9] It is apparent that PSP filed its lawsuit in this District, as it has with all

of the others, for the sole purpose of forcing Panther to choose between settling the lawsuit for a

nuisance settlement fee or spend considerably more money contesting venue.

3. <u>PSP knew that the D188 Patent was invalid based on PSP's own prior art, but filed the lawsuit anyways.</u>

Panther's invalidity investigation uncovered indisputable evidence that PSP knew its D188

patent was invalid when it filed the lawsuit. Specifically, Panther obtained a copy of a PSP's own

marketing brochure for a product called the "ZAP Light Stun Gun / Flashlight" ("ZAP Light").

Ex. D. This brochure was publicly available at least as of May 2011 based on the copyright notice

printed on the bottom left corner of the page. *Id.*

As demonstrated by the comparison below, the Zap Light stun gun has six spikes arranged

circularly as two arcs with three spikes in each arc ***exactly*** like the claimed design of the D188

Patent



| 'D188 Patent | PSP ZAP Light Brochure |
|---|---|
| Figure 1 | |

---

[9] It is improbable that 25 of the 26 defendants that PSP has ever sued for patent infringement happen to be incorporated in Arkansas or have a regular and established place of business in the Arkansas, particularly given that most of those defendants appear to be smaller companies based out of other states. It appears that PSP repeatedly files patent suits in its home state with an utter disregard for the patent venue statute, forcing defendants to fight frivolous venue allegations just as PSP has done to Panther in this lawsuit.

15

Because the brochure was disclosed more than a year before the filing date of the D188 patent, it is 35 U.S.C. § 102(b) prior art.[10] Consequently, the D188 Patent is invalid as anticipated by PSP's own prior ZAP Light publication. The invalidity is particularly apparent given PSP's broad reading of the D188 Patent. Indeed, if the D188 Patent were broad enough to read onto the plainly dissimilar Accused Product, as PSP alleges, then the patent must also be broad enough to read onto the vastly more similar—in fact nearly identical—ZAP Light.

Despite knowing that the D188 Patent was invalid based on PSP's very own ZAP Light brochure, PSP proceeded to assert the patent against Panther (and others).

4. <u>The D188 Patent is unenforceable due to PSP's fraud on the USPTO, and PSP knew that prior to filing suit.</u>

A case may be deemed exceptional where a patentee committed inequitable conduct in procuring the asserted patent. *See Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1358 (Fed. Cir. 2008) (explaining that inequitable conduct "may constitute a basis for an award of attorney fees under 35 U.S.C. § 285" and affirming trial court finding of an exceptional case based on plaintiff's inequitable conduct in procuring the asserted patent). Such a finding is appropriate here based on PSP's inequitable conduct in procuring the D188 Patent.

Mr. Pennington and his patent attorney had a duty to disclose any material prior art to the USPTO during examination of the application leading to issuance of the D188 Patent. *See In re Queen's Univ.*, 820 F.3d 1287, 1301 (Fed. Cir. 2016) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, **which includes a duty to disclose to the Office all information known to that individual to be material to patentability**.") (quoting Manual of Patent Examining Procedure § 2001).

---

[10] 35 U.S.C. § 102(b) states: "A person shall be entitled to a patent **unless** — (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, **more than one year prior to the date of the application for patent in the United States.**"

Withholding material prior art is a violation of that duty and constitutes fraud on the USPTO, which is known as "inequitable conduct" and renders a patent unenforceable. *See GS Cleantech Corp. v. Adkins Energy LLC,* 951 F.3d 1310, 1328-32 (Fed. Cir. 2020) (affirming district court finding of inequitable conduct where inventor concealed his invalidating prior offer for sale from the USPTO during patent application examination).

PSP was certainly aware that it had publicly marketed the ZAP Light prior to filing the D188 Patent. Yet, PSP never disclosed that fact to the USPTO during patent examination despite its clear materiality to the invention claimed in the D188 Patent. *See* Ex. B ("References Cited" on cover of D188 Patent not listing ZAP Light brochure as prior art before the patent examiner). Indeed, the D188 Patent would have never issued had the examiner been aware of the virtually identical ZAP Light product. Accordingly, PSP breached its duty of candor to the USPTO and the D188 Patent is unenforceable.

### B. PANTHER'S ATTORNEY FEES AND EXPENSES ARE REASONABLE AND WARRANTED.

Panther respectfully requests that it be awarded all of its attorney fees ($29,172.50) and expenses ($1,930.70), which were reasonable and necessary to defend against PSP's meritless claims. Zinda Decl. ¶¶10, 12. Panther also requests any additional fees incurred after the filing of this Motion, such as fees associated with the reply brief and any attorney involvement in a hearing.

Fees awarded for an exceptional case must be "reasonable." 35 U.S.C. § 285. A reasonable rate is one "adequate to attract *competent* counsel" while avoiding "windfalls to attorneys." *Biery v. United States*, 818 F.3d 704, 710 (Fed. Cir. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 444 (1983)) (emphasis added). In the Eighth Circuit a principal method of determining reasonable attorney fees is the "lodestar" method: "the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up

or down, to reflect the individualized characteristics of a given action." *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 972 (Fed. Cir. 2016) (internal quotations and citations omitted).

Panther's attorneys include Stephen Zinda and Munira Jesani of the law firm Cabello Hall Zinda, PLLC, which is an intellectual property law firm based out of Houston, Texas. John Watkins is a paralegal at Cabello Hall Zinda that provided services relating to this lawsuit. Panther also retained the services of Kevin Crass from the Friday, Eldredge & Clark, LLP to act as local counsel. The reasonableness of the hourly rates and hours expended are discussed below, as well as the upward or downward adjustment.

### 1.  Reasonableness of Hourly Rates

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982)). "However, rates are not limited to those prevailing in a local community where those rates would not be 'sufficient to attract experienced counsel' in a specialized legal field. In such a case, a national market or a market for a particular legal specialization may provide the appropriate market." *Little Rock Sch. Dist. V. State Ark. Dep't of Educ.*, 674 F.3d 990, 997 (8th Cir. 2012) (quoting *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993)). Under this standard, the hourly rates charged by Panther's counsel were reasonable.

The present case involves a "specialized legal field," namely patent law. As previously mentioned, only 158 patent lawsuits have been filed in Arkansas since 2012, which suggests that attorneys specializing in patent litigation are scarce in Arkansas and that clients are more willing to look to the national market. Regardless, the hourly rates of Panther's attorneys are reasonable even when compared to rates of intellectual property attorneys within Arkansas.

Mr. Zinda is a partner at Cabello Hall Zinda and his hourly rate is $450. Zinda Decl. ¶ 3. He has a B.S. degree in Electrical Engineering and over a decade of patent litigation experience. *Id.* Mr. Zinda also handles complex governmental patent proceedings, such as *inter partes* review and post-grant reviews and is admitted to the USPTO Patent Bar. *Id.* Per the American Intellectual Property Law Association 2021 Economic Survey ("AIPLA Survey"), in 2020 the average hourly billing rate for a partner at a private firm in "Other Central" (which includes Arkansas) was $453, with the third quartile being $544. Ex. G, p. I-37; *see also Energizer Brands, LLC v. Lumintop Tech. Co.*, 2020 U.S. Dist. LEXIS 51223, *5 (C.D. Cal. Feb. 3, 2020) (explaining that "[t]he AIPLA Survey appears to be a leading authority on the prevailing rates charged by IP counsel.") (citing *Monsanto Co. v. Bayer Cropscience, NV.*, No. 4:00CV01915-ERW, 2007 U.S. Dist. LEXIS 27156, at *8 (E.D. Mo. Apr. 12, 2007). When evaluated solely by IP technical specialization in electrical, the average billable rate was $603 and the third quartile was $838. Ex. G, p. I-37. Finally, based purely on experience of 10-14 years, the average billing rate was $545 and the third quartile was $625. *Id.* Accordingly, under any of these metrics Mr. Zinda's hourly rate is reasonable.

Ms. Jesani is of counsel at Cabello Hall Zinda and her hourly rate is $400. Zinda Decl. ¶ 4. She has a B.S. degree in Biomedical Engineering and six years of patent litigation experience. *Id.* As with Mr. Zinda, Ms. Jesani has handled complex governmental patent proceedings. *Id.* Per the AIPLA Survey, in 2020 the average hourly billing rate for a partner track attorney with 5-6 years of experience had an average rate of $324 and a third quartile of $373. Ex. G at p. I-49.  Based solely on having 5-6 years' experience, the average rate was $338 with a third quartile rate of $421. *Id.* Based solely on IP technical specialization in pharmaceuticals, the average rate was $449 and the third quartile was $706. *Id.* When her years of experience, patent specific experience, and technical background are all taken into consideration, her hourly rate is in line with those surveyed.

Mr. Crass is a partner at Friday Eldredge & Clark and his hourly rate is $390. Zinda Decl. ¶ 5. Mr. Crass is a senior partner with the Friday Firm whose practice emphasis is complex commercial litigation, including disputes over intellectual property such as patents and trademarks. *Id.* He has extensive experience litigating commercial disputes in federal and state courts and has been practicing law since 1984. *Id.* Per the AIPLA Survey, in 2020 the average hourly billing rate for a partner at a private firm in "Other Central" (which includes Arkansas) was $453, with the third quartile being $544. Ex. G, p. I-37. Based purely on experience of 35 or more years, the average billing rate was $648 and the third quartile was $855. *Id.* Accordingly, under any of these metrics Mr. Crass' hourly rate is reasonable.

### 2. Reasonableness of Hours Expended

Panther's attorneys and paralegals expended a total of 67.95 hours with respect to this lawsuit. Zinda Decl. ¶ 7. Cabello Hall Zinda accounted for 59.2 of those hours for a total of $25,760 in fees, and Friday Eldredge and Clark accounted for 8.75 hours for a total of $3,412.50 in fees. *Id.* ¶¶ 8-9.

The vast majority of the hours expended were on (i) preparing and filing the motion to dismiss, (ii) preparing the draft motion for Rule 11 sanctions, and (iii) preparing and filing the present motion. Zinda Decl. ¶ 11. These were not optional or minor tasks. *Id.* Instead, these were necessitated by PSP filing its meritless lawsuit, which forced Panther to defend itself and try and bring this case to a quick conclusion. *Id.*

### 3. Upward or Downward Adjustment

To the extent the Court believes an upward adjustment is necessary, one is certainly appropriate. In adjusting the fees up or down, "the most critical factor is the degree of success obtained." *Hubbard v. U.S.*, 480 F.3d 1327, 1332 (quoting *Hensley*, 461 U.S. at 436). The degree

20

of success in this case was absolute, as Panther's attorneys were able to force PSP to dismiss its frivolous lawsuit *with* prejudice without Panther having to pay any money to PSP or ceasing sales of the Accused Product. Consequently, Panther's attorneys were able to obtain the best possible outcome at a very early stage of the litigation proceedings. The overwhelming success justifies an upward adjustment.

### 4.  Reasonable Expenses

"All awards under 35 U.S.C.S. § 285 may or must include expenses, or expenses of any particular type or amount." *Cleo D. Mathis & Vico Prods. Mfg. Co. v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988); *See also Taked Chem. Indus. v. Myan Labs.*, 549 F.3d 1381, 1384-85 (Fed. Cir. 2008) (affirming award of expenses as part of fees award under § 285).

The total expenses in this case are $1,930, all of which were reasonable. Zinda Decl. ¶ 12. The expenses were:

- $300 for *pro hac vice* admission fees of Cabello Hall Zinda attorneys.

- $1,500 for an invalidity prior art search by the search firm Wissen Research, which uncovered the invalidating ZAP Light brochure that PSP concealed from the USPTO.

- Roughly $130 in Federal Express expenses relating to the letters sent to PSP's counsel, Chris Stewart.

*Id.* All of these expenses were reasonably necessary for Panther to defend itself in the litigation, including identifying prior art to invalidate the D188 Patent. *Id.*

### C.  DETERRENT SANCTIONS ARE APPROPRIATE AND IN THE INTEREST OF THIS DISTRICT.

The Court has inherent authority to sanction as a deterrent to frivolous and bad-faith legal filings. Deterrence sanctions in the amount of $100,000 are appropriate considering the exceptionally meritless claims asserted by PSP in this case, as well as PSP's extensive history of

filing dubious lawsuits in this District.

Since 2010, PSP has filed 25 patent suits in this Arkansas despite venue being improper in many of those suits. While it is unclear how many of those suits had meritless substantive claims (as in this case), it is apparent that PSP has burdened courts in this District. Consequently, the District has a substantial interest in deterring PSP from improperly filing additional patent lawsuits in Arkansas, which have accounted for more than 30% of <u>all patent suits in Arkansas</u> since 2010.

## V.        CONCLUSION

For the reasons above, Panther respectfully requests that the Court order PSP to pay Panther's attorney fees and expenses.  PSP had no legal or factual basis for alleging infringement based on the Accused Product, which has a plainly dissimilar design compared to the patented design. PSP also had no legal or factual basis for filing suit in Arkansas, which should have been evident based on a cursory investigation into Panther using publicly available information from the Internet. PSP also knew that the design patent was invalid based on PSP's own prior art ZAP Light marketing brochure, and committed inequitable conduct by withholding the brochure from the USPTO during prosecution. Despite all of this pre-suit knowledge, PSP proceeded to file its meritless lawsuit against Panther.

This lawsuit, like many of the others filed by PSP, is part of a pattern of leveraging the high cost of patent litigation defense to try and extract quick settlements, even when the asserted claims and venue are meritless. The Court has the inherent power to issue sanctions to deter this type of abuse. Accordingly, Panther requests that PSP Products and its counsel be sanctioned in the amount of $100,000 or any other amount the Court deems sufficient to deter future conduct like this. Doing so will undoubtedly save courts in this District from wasting precious judicial resources dealing with similar frivolous filings by PSP in the future.

August 2, 2022

Respectfully submitted,

/s/ *Stephen D. Zinda*
Stephen D. Zinda
*Attorney-in-Charge*
(*Pro Hac Vice* Application Pending)
J. David Cabello
(*Pro Hac Vice* Application Pending)
Munira Jesani
(*Pro Hac Vice* Application Pending)
CABELLO HALL ZINDA, PLLC
801 Travis Street, Suite 1610
Houston, TX 77002
Tel: 832-631-9990
Fax: 832-631-9991
stephen@chzfirm.com
david@chzfirm.com
mjesani@chzfirm.com

Kevin A. Crass, ABA #84029
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3493
crass@fridayfirm.com

**Attorneys for Defendant Panther Trading Company, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above document has been served on August 2, 2022 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per the Local Rules, as well as courtesy copies forwarded via electronic mail and Federal Express to:

Chris H. Stewart
Chris Stewart, PLLC
204 Executive Court, Suite 301
Little Rock, AK  72205
Email:  arklaw@comcast.net

*/s/ John Watkins*
John Watkins